IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| W.D., : <br> : <br> Plaintiff, : <br> : <br> v. :        No. 5:22-cv-164 (CHW) <br> : <br> KILOLO KIJAKAZI, :        Social Security Appeal <br> Acting Commissioner of Social Security, : <br> : <br> Defendant. : <br>                                     : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff W.D.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. The Commissioner's decision is based on the application of proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

Plaintiff filed an application for supplemental security income on April 23, 2015, alleging that he had been disabled since June 21, 2013. (R. 158). Plaintiff's application was initially denied on October 28, 2015, and denied upon reconsideration on February 9, 2016. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 7, 2018. (R. 98). The ALJ found that Plaintiff was not disabled on July 18, 2018. (R. 155). Plaintiff appealed the decision, and the Appeals Council remanded the case before a new ALJ on March

13, 2019, for further consideration. (R. 175). Plaintiff appeared at a hearing before the second ALJ on January 22, 2020. (R. 66). The ALJ issued denied Plaintiff's application again, and Plaintiff timely appealed. (R. 181, 202). The Appeals Council remanded the case for another hearing on September 14, 2019. (*Id.*) The ALJ held a third administrative hearing on June 10, 2021. (R. 41). On July 6, 2021, the ALJ again denied Plaintiff's application. (R. 12). On February 28, 2022, the Appeals Council denied Plaintiff's request for review. (R. 1). Plaintiff timely filed this action to appeal the final decision of the Commissioner denying his application. (Doc. 1).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

Plaintiff entered treatment at St. Joseph Mercy Care for a mental health evaluation and primary care referral on April 16, 2015, after being released from prison. (R. 880). Plaintiff had been diagnosed with post-traumatic stress disorder ("PTSD") and was experiencing nightmares, anger, and frustration. (R. 882). Plaintiff informed medical staff that he had been incarcerated for aggravated assault and agreed that he needed anger management. (*Id.*) Plaintiff had been prescribed Paxil while in prison but had not received his medication since his release. (*Id.*) On April 27, 2015, Plaintiff received a medical evaluation from Traci Morgan, FNP, in which he reported increased depression and difficulty sleeping. (R. 878). Plaintiff also reported that he had been abused, attempted suicide, and exhibited manic behavior in the past. (R. 477). Medical staff noted that Plaintiff had "trouble adjusting to the norms of society." (R. 873). On June 4, 2015, Plaintiff had a follow up appointment at St. Joseph's with Dr. Mary Moore for his back pain, shortness of breath, and left foot pain. (R. 888). Plaintiff reported undergoing foot surgery while

in prison. (*Id.*) Plaintiff received Naproxen for pain and Albuterol for his difficulty with breathing. (R. 889).

Plaintiff was evaluated at North Side Hospital on June 6, 2015, and diagnosed with antisocial personality disorder and PTSD. (R. 906). Plaintiff was deemed a moderate suicide risk because of his past attempt and current thoughts of self-harm. (R. 909). On June 10, 2015, Plaintiff underwent a behavioral health evaluation at Grady Hospital. (R. 993). On June 22, 2015, Plaintiff returned to Grady Hospital and reported mild depression, anhedonia, sleep difficulty, and fatigue. (R. 979). Plaintiff was diagnosed with major depressive disorder. (R. 1003).

Plaintiff was assessed by Dr. Ifetayo Ojelade, a psychologist at A Healing Paradigm, on July 29, 2015. (R. 1005-11). Dr. Ojelade conducted a clinical interview with Plaintiff and gave him a mental status exam. (*Id.*) Dr. Ojelade's report concluded that Plaintiff's symptoms appeared "sub-threshold" for a diagnosis of PTSD but were consistent with another trauma related diagnosis. (R. 1006). Plaintiff denied any current suicidal ideations and reported that he could dress, bathe, comb his hair, talk on the phone, ride in a car or bus, walk both long and short distances, perform household chores, manage money, pay bills, cook for himself, take his medicine, get in and out of bed, and use the bathroom on his own. (R. 1006-07). Plaintiff did indicate that he had a mild impairment regarding shopping, but he noted that this impairment was a result of adjusting to life after incarceration. (R. 1007). Dr. Ojelade opined that "there do not appear to be any clinically significant psychological factors that would adversely impact [Plaintiff's] daily functioning." (*Id.*) Plaintiff reported occasionally interacting with friends and family in person and on the phone and attending church weekly, feeding the homeless, attending cookouts, and fishing as activities he engaged in for fun. (*Id.*) Dr. Ojelade noted that Plaintiff's "clinical presentation suggests that he is able to appropriately manage interactions with others" and that Plaintiff was dressed

appropriately, his clothing was in good condition, and his hygiene appeared good. (*Id.*) In regard to Plaintiff's mental status, Dr. Ojelade reported that Plaintiff was oriented to person, place, and time; his motor behavior was normal; his speech quantity and quality were within normal limits; his facial expressions were congruent with the conversation during his interview; his eye contact was sufficient; his mood was calm; and he had a cooperative demeanor. (*Id.*) Dr. Ojelade observed that he established rapport with Plaintiff easily and that his thought processes appeared logical and coherent. (*Id.*)

Plaintiff reported auditory and visual hallucinations at times, but he denied having gustatory hallucinations, olfactory hallucinations, tactile hallucinations, or delusions of reference. (*Id.*) Dr. Ojelade noted that there were no indications of delusions or hallucinations during the testing sessions and concluded that Plaintiff's "hallucinations do not appear to meet the threshold for clinical significance." (*Id.*) Dr. Ojelade further noted that Plaintiff's attention and concentration skills were normal and that Plaintiff was able to follow commands. (*Id.*) Plaintiff's insight into his own psychological functioning and adjustment, abstracting ability, and judgment regarding decisions affecting his well-being appeared to be good, and although Plaintiff's cognitive abilities appeared to be in the lower range, testing did not indicate neurological impairment. (R. 1008-09). Dr. Ojelade diagnosed Plaintiff with other specified trauma and stressor related disorder, with subthreshold PTSD. (R. 1009). Plaintiff "appear[ed] to be experiencing mild psychological factors impacting his current functional abilities," but his "prognosis appear[ed] to be good with the maintenance of treatment" and "[h]is behavior … suggest[ed] no impairment in his ability to appropriately interact with the public." (*Id.*) Dr. Ojelade concluded that Plaintiff was currently reporting no impairment in his daily functioning, his clinical presentation was consistent with his reported level of daily functioning, he

demonstrated an ability to understand and remember both simple and detailed instructions, and his responses during the interview suggest that he has the ability to sustain attention over time. (*Id.*) Dr. Ojelade finished his assessment by reporting that "[o]verall, while there is a presence of psychological factors, they would prevent his [sic] from appropriately adapting to the stressors resulting from the demands of being in a work environment, daily functioning, and social interactions. He appears to be capable of handling his own finances." (*Id.*)

Plaintiff returned to St. Joseph's on August 4, 2015, reporting that he was unable to see a psychiatrist until September. (R. 890). Plaintiff reported anger, confusion, depression, suicidal thoughts without plans to attempt suicide, and hearing voices of prison guards. (R. 1033). Plaintiff also reported that he was still homeless and living out of a tent because he was unable to handle living in a shelter. (*Id.*) Plaintiff reported blurry distance vision on August 7, 2015. (R. 895). Plaintiff reported symptoms of depression and PTSD, feeling confused and hopeless, inability to sleep, and racing thoughts at his next mental health visit on August 18, 2015. (R. 1050). Plaintiff was evaluated as having an anxious affect with a hopeless mood and thoughts that were focused on his guilt and hopelessness. (R. 1052). Plaintiff's insight and judgment were determined to be fair, and he was prescribed Geodon. (*Id.*) On August 25, 2015, Plaintiff reported additional problems with his asthma and was prescribed Albuterol. (R. 1055-56). Plaintiff had a follow-up visit on September 1, 2015, and his Geodon prescription was increased. (R. 1057-59).

In 2016, Plaintiff was reincarcerated at Baldwin State Prison, and he continued his prescription of Geodon there. (R. 1064). Plaintiff underwent a psychological examination on January 5, 2016. (R. 1145). Plaintiff was found to have a blunt affect, reduced concentration, and rapid speech. (R. 1146). Plaintiff restarted his prescription of Geodon on February 8, 2016. (R.

1143). Plaintiff's affect remained flat throughout examinations on January 23 and 31, 2017. (R. 1268).

After Plaintiff was released from prison, he reported to St. Joseph's again on April 12, 2017. (R. 1268). Plaintiff reported "moderate" mental health symptoms and began taking Sertraline, which he had been prescribed previously. (R. 1265-66). Plaintiff disclosed that he had been incarcerated for violating his probation. (R. 1262). Plaintiff was again prescribed Geodon and continued in his prescription of Sertraline. (R. 1264). On June 13, 2017, Plaintiff reported improvements in his sleep and mood but also reported mood swings with easy agitation and continued flashbacks. (R. 1255). Plaintiff was residing in a men's shelter at this time. (*Id.*) Plaintiff's medications remained unchanged through a follow-up visit on June 21, 2017, and Plaintiff reported no complaints on an additional follow-up on August 14, 2017. (R. 1254-57, 1467). On February 1, 2018, Plaintiff followed up at St. Joseph regarding his knee pain. (R. 1500). Upon examination, Plaintiff was found to have left knee edema, tenderness, and pain with flexation. (*Id.*)

Plaintiff was reincarcerated and given a mental health evaluation at Fulton County Jail. (R. 1533). Plaintiff's mental status exam reported normal findings on March 25, 2018. (*Id.*) Plaintiff had another health evaluation regarding his anxiety and recurring memories on April 5, 2018. (R. 1547-48). Plaintiff transitioned to Johnson State Prison in April of 2019, where he was prescribed latanoprost eye drops, hydrochlorothiazide, a Xopenex inhaler, Geodon, and mirtazapine. (R. 1687, 1677-1725). In May 2020, Plaintiff was taking hydrocholorothiazide, Xopenex, Geodon, and Zyrtec. (R. 1733).

*Hearing Testimony*

At the hearing before the ALJ, Plaintiff explained that he was currently incarcerated because of a felony aggravated assault conviction and that he had not been assigned any work duty during his present incarceration. (R. 44-45). Plaintiff testified that his education ended after he completed the ninth grade. (R. 45). When asked by the ALJ what prevented him from working presently and in the past, Plaintiff responded that his back problems kept him from standing or sitting in one spot for too long and that he would sometimes collapse when his back "go[es] out" without warning. (R. 46-47). Plaintiff testified that he could comfortably lift about five pounds, that he could walk about 15 to 20 feet on his own, that he could only sit for two or three minutes without having to move around in his seat, and that he could stand without assistance for two to five minutes. (R. 47-48). Plaintiff reported his pain at a level seven and a half out of ten with his current medications and said that he thought he would require hospitalization because of the intensity of the pain without medications. (R. 49-50). Plaintiff explained that his main symptom regarding his mental health conditions was confusion about where he was, important dates, and his own age. (R. 51-52).

Plaintiff described the jobs he had previously held, including one at Clifton Ministries where he made sure that clients ate and provided them with clothes from the organization's clothes pantry for approximately four hours per week.[1] (R. 52). Plaintiff held this job for less than 90 days because of issues with concentration, anxiety attacks, and anger. (R. 53). Plaintiff quit this job by "just le[aving]." (*Id.*) Plaintiff reported that his outbursts were unpredictable, that he

---

[1] Plaintiff describes the hours he worked at this job as "two hours out of the week for like two days," which the Court has interpreted to mean two days of two-hour shifts, or four hours per week. However, Plaintiff may have meant that he only worked two hours total per week. In any case, Plaintiff worked a minimal amount at this job.

8

struggled to sleep or eat, and that side effects from his medications included severe constipation, headaches, and confusion. (R. 54-58).

## DISABILITY DETERMINATION

Following the five-step evaluation process, the reviewing ALJ made the following findings. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 17). At step two, the ALJ found that Plaintiff has the following severe impairments: post-traumatic stress disorder ("PTSD"), depression/bipolar disorder, antisocial personality disorder, asthma, history of left foot fracture/bunion, and degenerative disc disease of the lumbar spine. (R. 18). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) Before evaluating Plaintiff at step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 416.967(b) with the following exceptions: he can frequently climb ramps and stairs but never ladders, rope, or scaffolds; he may have no exposure to pulmonary irritants or concentrated forms of fumes, odors, dusts, or gases; he should have no exposure to hazardous conditions, such as unprotected heights, dangerous machinery, or uneven, moving surfaces; he is limited to simple routine and repetitive tasks; he should perform piece paid type work; he may have occasional interaction with the public, occasional interaction with coworkers, and occasional interaction with supervisors; he is able to maintain attention concentration for two-hour blocks of time during an eight-hour workday; he is able to schedule and maintain regular attendance and be punctual within customary work tolerances; he is able to sustain ordinary routine without special supervision; he should not engage in any independent task planning at work; he is able to accept and respond to direction and criticism

from supervisors; he should not perform jobs requiring fine visual acuity such as those requiring picking up small objects like needles or jobs that require reading print below newspaper-sized print. (R. 22). At step four, with the benefit of a Vocational Expert, the ALJ found that Plaintiff could not perform relevant past work. (R. 28). At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff is able to perform, such as merchandise marker, surgical instrument instructor, and office router. (R. 29). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 30).

## ANALYSIS

Plaintiff contends that the ALJ erred in his evaluation of a consultative psychiatric examiner's opinion (1) because the ALJ failed to explain his rejection of the opinion, (2) because the factors for evaluating medical opinions support giving the opinion higher weight, and (3) because the ALJ failed to evaluate an inconsistency in the opinion as directed by the Appeals Council. (Doc. 10 at 8). These arguments do not warrant remand. Because the ALJ did not err and because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner must be affirmed.

   1. *The ALJ did not err in his rejection of Dr. Ojelade's opinion*

First, Plaintiff argues that the ALJ erred by failing to properly explain his rejection of Dr. Ojelade's opinion. (Doc. 10 at 10). Plaintiff contends that "[d]espite discussing the opinion" of Dr. Ojelade in this section of the decision, "the ALJ did not give 'clearly articulated grounds for rejection'" as required. (Doc. 10 at 10 (*citing Winschel v. Comm'r. of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011)). However, the ALJ's decision shows that he reviewed Dr. Ojelade's opinion, determined that it was internally inconsistent, and, accordingly, assigned it little weight

in making his determination. The ALJ clearly articulated the reasons for his determination, explaining as follows:

> Dr. Ojelade opined that the claimant's behavior during the interview suggested no impairment in his ability to appropriately interact with the public. He opined that the claimant demonstrated an ability to understand and remember simple and detailed instructions and ability to sustain attention over time. However, Dr. Ojelade also opined that the claimant has psychological factors that would prevent him from appropriately adapting to stressors, which is vague and unclear but could suggest significant limitations. … This aspect of Dr. Ojelade's opinion is not supported by the claimant's own reports of activities of daily living and Dr. Ojelade's notation of a consistent clinical presentation with his unimpaired daily functioning, suggesting that this aspect of Dr. Ojelade's opinion may have been a typographical error. Furthermore, Dr. Ojelade documented that the claimant presented appropriately dressed and groomed with good insight and judgment, and there were no noted difficulties in adapting during this evaluation. However, the objective examination findings during this consultative examination have been considered in conjunction with all other objective evidence.

(R. 27).

Despite Plaintiff's contention that this analysis is insufficient, the ALJ's decision states very plainly that he found the opinion to be internally inconsistent for the following reasons: he suspects the internal inconsistency to be the result of a typographical error and the inconsistent portion of Dr. Ojelade's opinion is vague, unclear, and unsupported by Plaintiff's own reports of his activities as well as other aspects of Dr. Ojelade's findings. (R. 27). These findings are consistent with the record. In the summary portion of his report, Dr. Ojelade concludes, "Overall, while there is a presence of psychological factors, they would prevent his [sic] from appropriately adapting to the stressors resulting from the demands of being in a work environment, daily functioning, and social interactions." (R. 1009). The structure of this sentence suggests that Dr. Ojelade intended to state that these psychological factors "would not prevent" Plaintiff from adapting to the demands of the workplace. This construction is also consistent with the substance of the report, which describes Plaintiff's psychological factors as "mild" and notes that Plaintiff's

11

"behavior during this interview suggests no impairment in his ability to appropriately interact with the public." *Id.* Plaintiff cites no authority for the proposition that grounds for rejecting evidence must be more clearly articulated than the ALJ's analysis. The applicable standard requires ALJs to clearly state the weight afforded to each medical opinion and the reasons for their determinations in order "for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Here, the ALJ's analysis is sufficient to allow the Court to reach such a conclusion.

Whether or not the internal inconsistency of Dr. Ojelade's opinion was due to a typographical error, the ALJ's findings are supported by the record. The substantial finding of the ALJ was that Dr. Ojelade's opinion is internally inconsistent because of the various aspects of Plaintiff's evaluation that contradict Dr. Ojelade's finding that Plaintiff is not capable of appropriately adapting to work stressors. The accuracy of the ALJ's interpretation of the root cause of that internal inconsistency is irrelevant, as the ALJ properly identified an internal inconsistency and adequately explained his reasons for such a finding, citing Plaintiff's self-reports and other aspects of Dr. Ojelade's opinion as evidence. (R. 27). To the extent that Plaintiff argues that the suggestion of a typographical mistake was an error on the part of the ALJ, this argument is unfounded.

While Plaintiff has identified additional aspects of the report that support an alternative finding, merely pointing to evidence in the record that supports an alternative conclusion is insufficient to overcome the ALJ's finding. The ALJ's findings must be affirmed if they are supported by substantial evidence, even if the preponderance of the evidence is against the ALJ's findings. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Plaintiff's arguments that the

ALJ did not adequately explain his reasons for rejecting Dr. Ojelade's opinion and that other aspects of Dr. Ojelade's support an alternative finding fail to show either that the ALJ's findings are unsupported by substantial evidence or that the ALJ erred.

Review of the ALJ's decision shows that the rejection of Dr. Ojelade's opinion is supported by substantial evidence. The ALJ identified Plaintiff's own self-reported activities, Dr. Ojelade's notation of consistent clinical presentation with unimpaired daily functioning, Plaintiff's appearance during the examination, and other factors from Dr. Ojelade's opinion as evidence that Dr. Ojelade's determination that Plaintiff could not appropriately adapt to stressors was inconsistent with the rest of the opinion. The evidence that the ALJ relied upon in making this determination is substantial.

2. *The ALJ did not err in his application of the relevant factors to Dr. Ojelade's opinion*

Plaintiff also argues that proper factor analysis for weighing medical opinions requires reliance upon Dr. Ojelade's opinion. (Doc. 10 at 11-13). When weighing a medical opinion, ALJs are required to apply the following relevant factors: (1) length of treatment relationship and frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, and (5) specialization. 20 C.F.R. §§ 404.1527(d)(2)-(5); 416.927(d)(2)-(5). ALJs may also consider other factors that support or contradict the opinion at issue. *Id.* Plaintiff argues that the listed factors weigh in favor of accepting Dr. Ojelade's opinion, as Dr. Ojelade is an examining provider and therefore his opinion deserves more weight than a non-examining provider,[2] Dr. Ojelade's opinion is supported by the other findings in the examination, Dr.

---

[2] Plaintiff's case originated before the "Revisions to Rules Regarding the Evaluation of Medical Evidence" were published by the Social Security Administration. *See* 82 Fed.Reg. 5844-1. Accordingly, the prior rules of evaluation apply to his case.

Ojelade's opinion is consistent with the remaining evidence in the record, and Dr. Ojelade is a psychologist licensed in the state of Georgia.  (Doc. 10 at 11-12).

As an initial matter, ALJs need not explicitly address each analysis factor when issuing their decisions.  *Brock v. Comm'r. of Soc. Sec.*, 758 F.App'x. 745, 751 (11th Cir. 2018).  Accordingly, any error that Plaintiff attributes to the ALJ failing specifically to address a certain factor is unfounded.  Further, Plaintiff is mistaken in his claim that Dr. Ojelade's opinion deserved any special weight or deference, as Dr. Ojelade acted as a consultative examiner.  *See Crawford v. Comm'r. of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).  Even if Plaintiff was not mistaken about the weight due to Dr. Ojelade's opinion, the ALJ rejected the opinion because of internal inconsistency, which has been held to be a valid reason for rejecting the opinion of even a treating doctor.  *See Washington v. Soc. Sec. Admin. Comm'r.*, 791 F.App'x. 871, 875 (11th Cir. 2019).  Substantial evidence supports the ALJ's determination that Dr. Ojelade's opinion lacked supportability.  As explained above, the ALJ reasonably found that Dr. Ojelade's opinion was internally inconsistent, contradicted by Plaintiff's own testimony regarding his activities, and contradicted by other aspects of the examination.  Additionally, the ALJ's review of the rest of the record failed to find adequate support for Dr. Ojelade's opinion.

Finally, to the extent that Plaintiff suggests that the Court should assign different weights to the factors he identifies, that would be an impermissible reweighing of the evidence.  *See Mitchell v. Comm'r. Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.")  Therefore, substantial evidence supports the ALJ's application of the relevant factors in assessing Dr. Ojelade's opinion.

> *3. The ALJ did not err by failing to address the inconsistency identified by the Appeals Council*

Plaintiff contends that the ALJ failed to address a prior inconsistency identified by the Appeals Council. (Doc. 10 at 13). Plaintiff refers to the Appeals Council's instruction for remand, which notes the internal inconsistency in Dr. Ojelade's opinion: "Dr. Ojelade's opinion seems internally inconsistent . . . Further consideration is warranted of Dr. Ojelade's opinion." (R. 204). Plaintiff argues that the ALJ identified the internal inconsistency in the opinion but failed to resolve the inconsistencies as required by the Appeals Council. (Doc. 10 at 13). The decision shows, however, that the ALJ did resolve the internal inconsistency—the ALJ evaluated the inconsistency in detail, explained that the inconsistency appeared to be a typographical error, and disregarded the opinion as a result of his analysis. (R. 27). The fact that Plaintiff disagrees with the ALJ's resolution of the issue identified by the Appeals Council does not mean that the ALJ's resolution was in error.

Plaintiff also suggests that because the ALJ did not request additional evidence or clarification from Dr. Ojelade, the ALJ "left [his] decision unsupported by substantial evidence." This argument is unpersuasive, as the ALJ was not required to contact Dr. Ojelade to reach his decision. The Appeals Council ordered the ALJ to "further consider Dr. Ojelade's opinion pursuant to 20 § C.F.R. 416.927" and provided that "as appropriate, the [ALJ] may request Dr. Ojelade provide additional evidence and or/further clarification of the opinion." The ALJ properly considered the opinion pursuant to 20 § C.F.R. 416.927, and he was not required to request further information from Dr. Ojelade by the Appeals Council, as made clear by the language "as appropriate" and "may" in the Council's instructions. As discussed above, the ALJ's evaluation of Dr. Ojelade's opinion is supported by substantial evidence.

Accordingly, Plaintiff has not demonstrated that the ALJ erred regarding the Appeal Council's directive.

## CONCLUSION

Plaintiff's arguments, which fail to show that the ALJ made a reversible error or that the ALJ's findings are not supported by substantial evidence, are meritless. Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, this 31st day of August, 2023.

                                              s/ Charles H. Weigle
                                              Charles H. Weigle
                                              United States Magistrate Judge